1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARETH T.,[1] | Case No. 2:20-cv-06913-AFM |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

**BACKGROUND**

Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning August 24, 2016. (Administrative Record ("AR") 179-192.) Plaintiff's applications were denied. (AR 93-98.) On

---

[1]   Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

July 9, 2019, Plaintiff appeared with counsel at a hearing conducted before an Administrative Law Judge ("ALJ"). At the hearing, Plaintiff and a vocational expert ("VE") testified. (AR 42-68.)

On September 13, 2019, the ALJ issued a decision finding that Plaintiff suffered from the following medically severe impairments: coronary artery disease with prior myocardial infarction, status post angioplasty and stent placement. (AR 28.) After determining that Plaintiff's impairments did not meet or equal a listed impairment, the ALJ assessed Plaintiff as retaining the residual functional capacity ("RFC") to perform medium work with the following restrictions: Plaintiff can frequently climb ramps and stairs, ladders, ropes, and scaffolds; he is able to frequently balance, stoop, kneel, crouch, crawl, and work on uneven terrain; and he is unable to work around heavy moving machinery. (AR 31.) Relying on the testimony of the VE, the ALJ determined that Plaintiff was not able to perform his past relevant work as a machine operator, but was able to perform other work existing in significant numbers in the national economy – including the occupations of hand packager, dining room attendant, and day worker. (AR 35-36.) Accordingly, the ALJ determined that Plaintiff was not disabled from August 24, 2016 (the date of Plaintiff's application) through the date of his decision. (AR 37.) The Appeals Council denied review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

1. Whether Plaintiff is entitled to a remand based upon the unconstitutional removal procedure in effect during the tenure of Andrew Saul.

2. Whether the ALJ provided legally sufficient reasons for rejecting Plaintiff's subjective complaints.

3. Whether the ALJ provided legally sufficient reasons for rejecting lay testimony.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. In the social security context, the substantial evidence threshold is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

**I.     Plaintiff's Constitutional Challenge**

Plaintiff contends that the final decision of the Commissioner in his case "arises from an unconstitutional administrative process." (ECF 20 at 16.) Specifically, Plaintiff reasons that that 42 U.S.C. § 902(a)(3) – which limits the President's authority to remove the Commissioner of Social Security without good cause – violates separation of powers. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020) (holding that a for-cause restriction of the President's executive power to remove the CFPB's single director violated the separation of powers doctrine). According to Plaintiff's argument, the unconstitutional removal provision rendered Andrew Saul's tenure as Commissioner (from June 17, 2019 to July 11, 2021) unconstitutional and the delegated authority of the ALJ assigned to hear his case was "tainted" because it occurred under that unconstitutional tenure. Plaintiff argues that

he is entitled to a de novo hearing because of this constitutional error. (ECF 20 at 16-20.)

The Commissioner concedes that § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. (ECF 27 at 9.) Nevertheless, the Commissioner argues Plaintiff is not entitled to a remand because the ALJ who heard Plaintiff's claim was properly appointed by Acting Commissioner Nancy Berryhill and because Plaintiff has failed to show any connection between the unconstitutional removal clause and the ALJ's decision denying him benefits. The Commissioner also argues that the Court should deny Plaintiff's request for a new hearing based upon other legal and prudential considerations. (ECF 27 at 9-20.) For the following reasons, the Court rejects Plaintiff's claim.

Plaintiff's argument is based upon *Lucia v. SEC*, 138 S. Ct. 2044 (2018). In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission are Officers of the United States and must be constitutionally appointed. *Lucia*, 138 S. Ct. at 2055. The Court concluded that the "appropriate" remedy for an adjudication tainted with an appointments violation is a new "hearing before a properly appointed" official. *Lucia*, 138 S. Ct. at 2055 (citing *Ryder v. United States*, 515 U.S. 177, 182-183 (1995)). Unlike *Lucia*, however, Plaintiff does not rely on an allegedly unconstitutional appointment. To the contrary, he concedes that the ALJ who decided his case had been properly appointed by Acting Commissioner Berryhill at the time he decided Plaintiff's disability claim. (*See* ECF 20 at 19-20.)[2] Therefore, there is no Appointments Clause violation. *See Rivera-Herrera v. Kijakazi,* 2021 WL 5450230,

---

[2] On July 16, 2018, responding to the decision in *Lucia*, the acting Commissioner of the SSA, Nancy Berryhill ratified the appointments of ALJs and administrative appeals judges (who were previously appointed by lower-level staff, rather than the Commissioner herself) to address any prospective Appointments Clause concerns. *See Rivera-Herrera v. Kijakazi*, 2021 WL 5450230, at *5 (E.D. Cal. Nov. 22, 2021); SSR 19-1p, 84 Fed. Reg. 9582, 9583 (2019). Plaintiff does not allege that Acting Commissioner Berryhill's authority was tainted by the unconstitutional removal provision.

at *6 (E.D. Cal. Nov. 22, 2021) ("the ALJ who adjudicated Plaintiff's claim on September 18, 2019 was properly appointed pursuant to former Acting Commissioner Berryhill's July 16, 2018 ratification of ALJ appointments. As such, there is no Appointments Clause violation."); *Lisa Y. v. Comm'r of Soc. Sec.*, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021) (same); *Marrs v. Comm'r of Soc. Sec.*, 2021 WL 4552254, at *4 (N.D. Tex. Oct. 5, 2021) (same).

Notwithstanding his characterization, Plaintiff's claim is based on an allegedly unconstitutional removal provision, and therefore, the controlling law is set forth in *Collins v. Yellen*, 141 S. Ct. 1761 (2021). *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) ("*Collins* is controlling with respect to the remedy for any unconstitutionality in the removal provisions."). In *Collins*, the plaintiffs sought a judicial declaration invalidating prior actions by the FHFA directors, who possessed removal protection and therefore headed an unconstitutionally structured agency. *Collins*, 141 S. Ct. at 1787. The Supreme Court found such relief unwarranted. *Id*. at 1788. Rather, a plaintiff must demonstrate that the unconstitutional provision actually caused him or her harm. *Id*. at 1788-1789. The Supreme Court refused to invalidate the prior actions in their entirety, explaining:

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA ... as void.

*Id*. at 1787 (emphasis in original).

Accordingly, a claimant seeking relief must show that an unconstitutional removal restriction actually caused her harm. *See Collins*, 141 S. Ct. at 1787-1789 & n.24 (an unconstitutional removal restriction "does not mean that actions taken by such an officer are void *ab initio* and must be undone"); *Decker Coal Co.*, 8 F.4th at

1137 ("Here, the ALJ lawfully exercised power that he possessed by virtue of his appointment, which the Secretary ratified before the ALJ adjudicated the claim. Absent a showing of harm, we refuse to unwind the decisions below.").

Plaintiff identifies no particular harm suffered by virtue of his claim being adjudicated during Commissioner Saul's tenure by an ALJ who was otherwise properly appointed. He has failed to show any connection between the unconstitutional removal clause and the ALJ's decision denying him benefits. Further, nothing in the record supports the conclusion that the disability decision in Plaintiff's case is in any way traceable to Commissioner Saul. Accordingly, Plaintiff is not entitled to a new hearing. *See Toni D. v. Kijakazi,* 2022 WL 423494, at *3 (C.D. Cal. Jan. 5, 2022) ("an ALJ's decision is not "tainted" by an unconstitutional restriction on the removability of an agency official having no direct connection to the decision"); *Sean E. M. v. Kijakazi,* 2022 WL 267406, at *5 (N.D. Cal. Jan. 28, 2022) (because plaintiff failed to show connection between the unconstitutional removal provision and denial of benefits, he was not entitled to new hearing based upon constitutional challenge); *Ramos v. Comm'r of Soc. Sec*., 2022 WL 105108, at *4 (E.D. Cal. Jan. 11, 2022) (same); *Rivera-Herrera,* 2021 WL 5450230, at *8 (same); *Catherine J.S.W. v. Comm'r of Soc. Sec*., 2021 WL 5276522, at *8 (W.D. Wash. Nov. 12, 2021) (same); *see also Decker Coal,* 8 F.4th at 1136-1138 (plaintiff not entitled to new hearing based upon allegedly unconstitutional removal provision where the plaintiff failed to show make any showing of a nexus between the allegedly unconstitutional removal provisions and the ALJ's decision).

## II.   Whether the ALJ Properly Considered Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ erred in discounting his testimony regarding his subjective symptoms and limitations. (ECF 20 at 5-13.)

### A.  Plaintiff's Subjective Complaints

Plaintiff alleged that he is unable to work due to ischemic heart disease, coronary heart disease, high blood pressure, hemorrhage stroke, vascular insult to the

brain, memory impairment, difficulty maintaining concentration, stress, and intracranial pressure. (*See* AR 224.) At the hearing, Plaintiff testified that he underwent a stent procedure for his heart in 2013. He felt "better" after his procedure and was able to return to work. (AR 46-47.) Plaintiff's primary physician prescribed him medication for his heart, and that medication "keeps [him] moving." (AR 47.)

Plaintiff stopped working in 2016 because he was laid off due to "lack of work." He believed that he could have continued working if he had not been laid off. (AR 47.)

When asked to identify the primary issue preventing him from working, Plaintiff testified that he suffers from "pressure" in his head.  He can hear a sound like "air leak[ing]" and it is "so loud in his head" that it prevents him from sleeping. As a result, Plaintiff gets tired and weaker. According to Plaintiff, his doctors told him that there was nothing he could do about the problem. (AR 48-52.) Plaintiff also testified that he has problems with swelling in his right hand and wrist. The swelling and pain increase if Plaintiff performs a lot of movement. Doctors have been unable to find anything wrong with it. Other than a cream that Plaintiff rubs on it, Plaintiff did not receive medication or treatment for his wrist. (AR 48-51.)  In addition, Plaintiff testified that he has trouble remembering things. Sometimes when he was told to do something at work, he would "just forget about it." (AR 59.)

As for his daily activities, Plaintiff testified that he lives with his wife and adult daughter. Although he is not able to do yardwork or take out the trash, but he is able to help around the house by washing the dishes "a little bit," rolling the trashcans in once they're empty, and he "helps" his wife drive. (AR 54-55.) Plaintiff gets tired after standing for four or five minutes, after which he needs to "relax." (AR 56.)

Plaintiff completed a Function Report in which he indicated that he has difficulty concentrating, and suffers from short-term memory loss such that he requires assistance remembering instructions or what he previously said. (AR 262.) Plaintiff cooks his meals throughout the day – spending less than one hour to do so –

relaxes, and watches television. He exercises on a bicycle every other day. (AR 263.) He is able to do laundry, wash clothes, and wash his dishes. (AR 264.) He is also able to drive a car and go grocery shopping, which takes an hour or two. (AR 265.) Plaintiff has no problems with personal care such as grooming, toileting, or eating. (AR 263.)

According to his Function Report, Plaintiff is able to walk less than a mile before needing a ten or twenty-minute rest. His attention span is limited depending upon what he is doing and he has trouble following spoken instructions – he needs everything to be written down. (AR 267.)  Plaintiff uses a medicine organizer to help him remember to take his medication. (AR 263.) Plaintiff suffers from intracranial pressure, which he described as feeling and hearing pressure inside of his head. When it is quiet, Plaintiff hears the noise inside his head which makes it difficult to concentrate. Plaintiff tries to distract himself by watching television. (AR 269.)

## B.  Relevant Law

Where, as here, a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms, and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear, and convincing reasons before rejecting a claimant's testimony about the severity of her symptoms. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-489 (9th Cir. 2015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see Lambert*, 980 F.3d at 1277 (an ALJ is required to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony.") (citation omitted). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony

on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991)) (en banc).

Factors an ALJ may consider include conflicts between the claimant's testimony and the claimant's conduct – such as daily activities, work record, or an unexplained failure to pursue or follow treatment – as well as ordinary techniques of credibility evaluation, such as internal contradictions in the claimant's statements and testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). In addition, although an ALJ may not disregard a claimant's testimony solely because it is not substantiated by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in making a credibility assessment. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

**C. Analysis**

Here, the ALJ concluded that Plaintiff's impairments resulted in some functional limitations, but that his allegations as to the intensity, persistence, and limiting effects of his symptoms was less than fully credible. (AR 32.) The ALJ provided the following reasons in support of this determination.

1. Lack of Objective Medical Evidence

The ALJ concluded that the objective medical evidence did not support the severity of Plaintiff's allegations. In reaching this conclusion, the ALJ summarized and discussed the medical evidence.

Medical Evidence

Plaintiff had a history of myocardial infarction from January 2103, at which time he received a stent. (AR 353.)

Treatment notes from Plaintiff's treatment physician, Hor Chhay, M.D., dated January 24, 2017, reveal an unremarkable physical examination. Dr. Chhay diagnosed Plaintiff with unspecified essential hypertension; acute but ill-defined,

cerebrovascular disease; old myocardial infarction; and pure hypercholesterolemia. (AR 313-316.)

In May 2017, Plaintiff complained of noise in his ears and decreased hearing ability. After examination, he was diagnosed with cerumen impaction of the left ear, tinnitus and hearing loss. (AR 338-339.) Plaintiff returned for a hearing examination in June 2017. Left ear cerumen was removed. Results of a hearing test showed moderate sloping to moderately-severe sensorineural hearing loss from 3000Hz to 8000Hz for the right ear and a mild sensorineural hearing loss from 3000Hz to 8000Hz for the left ear. It was recommended that Plaintiff return for a hearing aid evaluation once medical clearance was obtained. (AR 334.) At a follow-up in September 2017, Plaintiff was again assessed with tinnitus and high frequency hearing loss. Plaintiff indicated that he did not want to pursue a hearing aid at that time. (AR 340.)

In August 2017, Plaintiff complained of chronic pain in his right wrist and poor memory. He requested a neurology consultation. (AR 351.) Physical examination was normal except for right wrist tenderness upon palpation. (AR 353.) He was referred for a neurological consultation based upon his complaints of memory deficits. (AR 354.)

Dr. Chhay saw Plaintiff for a follow-up in March 2018. Physical examination was entirely normal. Plaintiff had full range of motion in his extremities, with no deformities, edema or erythema. (AR 361.) His condition was noted as "stable" and he was diagnosed with pure hypercholesterolemia; acute, but ill-defined, cerebrovascular disease; unspecified essential hypertension; anxiety disorder; painful wrist joint; and overweight. (AR 362.)

In June 2018, Plaintiff was evaluated by consultative physician, Bryan H. To, M.D. Plaintiff reported a history of headaches. Plaintiff also reported a history of right wrist and hand pain with swelling and stiffness. He said that medication helps, but "only for a short period of time." (AR 365.) Plaintiff also reported a history of

depression and increasing memory loss, and said that he sees a neurologist for the memory loss. (AR 365.) Physical examination showed 20/20/20 grip strength in both the right and left hand. (AR 366.) Plaintiff's gait was normal and he ambulated without an assistive device. (AR 366.) Cardiovascular examination was normal. (AR 367.) Plaintiff's muscle tone and mass were normal; there was no tenderness to palpation; and range of motion was normal in all extremities, although "with complaint of range of motion pain." (AR 367.) Motor function was normal and motor strength was 5/5 throughout. (AR 367-368.) Dr. To observed that Plaintiff's memory "appear[ed] to be intact, as [Plaintiff] is able to recall relevant data pertaining to the current medical condition." (AR 367.)

Under "Discussion/Diagnoses:" Dr. To found the following:

1. Plaintiff had a history of hemorrhagic cerebrovascular accident in 2006. After a craniotomy, Plaintiff recovered well and denied any residual weakness. Plaintiff is not following up with a neurosurgeon;

2. Plaintiff was diagnosed with myocardial infarction and coronary artery disease in 2013. He is status post angioplasty with the placement of three stents. Plaintiff denied further chest pain and was not seeing a cardiologist.

3. Hypertension. Plaintiff's blood pressure as 160/98. There was no evidence of acute end organ damage and Plaintiff denied recent history of transient ischemic attack, headaches, or slurred speech.

4. Right wrist and hand pain. Physical examination revealed no evidence of deformity or swelling. Plaintiff reported range of motion pain.

5. Depression and memory loss. Plaintiff is not taking any medication and does not see a psychiatrist. He does see a neurologist for the memory loss and he takes medication.

(AR 368-369.)

Dr. To opined that Plaintiff could push, pull, lift, and carry 50 pounds occasionally and 25 pounds frequently; sit for six hours and stand/walk for six hours

in an eight-hour workday; can frequently perform postural movements, walk on uneven terrain, climb ladders and work with heights; had no limitations on hearing, seeing, use of hands for fine and gross manipulative movements; did not need assistive ambulatory device; and should be restricted from working with heavy moving machinery. (AR 369.)

Treatment notes from Dr. Chhay dated August 17, 2018, indicate that Plaintiff had been to the hospital in July complaining of blurred vision and malaise and was seen for a possible cerebrovascular accident. Dr. Chhay reviewed the discharge report. Plaintiff reported that he now felt fine and requested a refill of his medications. (AR 390.) His blood pressure was 142/83. Physical examination – including examination of Plaintiff's head, eyes, ears, nose, throat, neck, chest, lungs, heart, abdomen, back, skin and a neurological evaluation – was normal. Plaintiff had full range of motion in his extremities with no deformities, edema, or erythema. (AR 391.) In Dr. Chhay's assessment, Plaintiff was stable and doing well. He was diagnosed with hypertension; old myocardial infraction; hypertriglyceridemia; and overweight. (AR 392.) According to Dr. Chhay, Plaintiff had no impairment in functional or cognitive status. (AR 392.)

Dr. Chhay examined Plaintiff again in November 2018. Plaintiff's blood pressure was 138/79. Physical examination again was normal. His medications were continued and he received an influenza vaccination. (AR 393-395.)

In a follow-up visit in February 2019, Dr. Chhay noted that Plaintiff had no new complaints, but requested refill of his medication. Plaintiff's blood pressure was 124/70. Plaintiff reported that he was "asymptomatic." (AR 402.) Physical examination was normal and Plaintiff had full range of motion in his extremities. (AR 403.) Dr. Chhay indicated that he had reviewed a January 25, 2019 treadmill report from Minh N. Nguyen, M.D. (AR 399.) He found the result "inconclusive due to short test duration, but without evidence of [i]schemia or arrhythmia during test."

(AR 403.) Dr. Chhay observed that Plaintiff had "no disability, no impairment" in either his "functional status" or his "cognitive status." (AR 404.)

### The ALJ's Discussion of the Medical Evidence

With regard to Plaintiff's myocardial infraction in 2013 and coronary artery disease, the ALJ observed that Plaintiff denied further chest pain and was not following with a cardiologist. His chest, lungs, and cardiovascular examinations were normal. (AR 33.) Similarly, with respect to Plaintiff's history of hemorrhagic cerebrovascular accident, the ALJ noted that Plaintiff denied residual weakness from the event, was not following with a neurosurgeon, and there was no evidence of acute end organ damage, transient ischemic attack, headaches, or slurred speech. (AR 33.)

With regard to Plaintiff's subjective complaints of wrist pain and swelling, the ALJ noted the absence of medical evidence showing that Plaintiff suffered from a medically determinable impairment related to his wrist. (AR 32-33.) The ALJ acknowledged that treatment notes from 2017 and the consultative examiner's 2018 report reflected Plaintiff's complaints of wrist pain and tenderness on palpation/range of motion. However, the ALJ observed that the record lacked a "diagnostic confirmation for an etiology." (AR 31, citing AR 351, 353, 388.) Specifically, the ALJ observed that Plaintiff had normal range of motion in all extremities, with complaints of pain, but no evidence of deformity, swelling, or tenderness. (*See* AR 33.) Further, Plaintiff's testimony that x-rays revealed nothing wrong with his right wrist and that the doctors did not know the cause of his wrist pain. (AR 32.)

With regard to Plaintiff's allegations regarding weakness and limitations – i.e., allegations that he got tired after four or five minutes of standing or was unable to take out the trash when it was full – the ALJ observed that Dr. Chhay's treatment records consistently reflected normal sensory examinations, normal gait, and did not reflect any problems with fatigue or musculoskeletal limitations. In addition, Dr. To's examination findings showed pain, but otherwise normal range of motion in

all extremities; normal gait; normal muscle tone and mass; and 5/5 motor strength. (AR 33-34.)

The ALJ also found the record lacked any evidence to indicate that Plaintiff's physical conditions were causing significant limitations in his memory or concentration. To the contrary, the ALJ noted the evidence showing Plaintiff's neurological examination was normal; he was oriented to time, place, person, and purpose; his memory was intact; he had no problem with coordination; his deep tendon reflexes were symmetric and 2 plus; and cranial nerves were grossly intact with normal motor function. (AR 33.)

Plaintiff points out that the ALJ relied on what is essentially boilerplate language, stating that Plaintiff's subjective statements were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (ECF 20 at 7, citing AR 32.) Further, Plaintiff correctly observes that such language standing alone is "deficient"; rather, an ALJ is required to provide specific, clear, and convincing reasons for his credibility assessment. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). Contrary to Plaintiff's contention, however, the ALJ here complied with that obligation. As set forth above, the ALJ specifically identified the testimony of Plaintiff that he found not credible and explained what evidence undermined that testimony. *See Lambert*, 980 F.3d at 1277 (ALJ is required to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony") (citation omitted).

Where, as here, the ALJ's determination is supported by substantial evidence, the Court may not second guess it. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'") (quoting *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)); *see also Saavedra v. Berryhill*, 2019 WL 1171271, at *4 (C.D. Cal. Mar. 12, 2019) (explaining that "this Court will not second guess the ALJ's

reasonable determination . . . even if the evidence could give rise to inferences more favorable to plaintiff") (citing *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012)). Thus, as long as this was not the sole reason for discounting Plaintiff's testimony, the ALJ properly relied upon the lack of objective medical findings supporting Plaintiff's alleged symptoms and limitations. *See Burch*, 400 F.3d at 681 (including lack of supporting medical evidence as one factor that an ALJ can rely on in discrediting claimant testimony). In the present case, the ALJ provided additional reasons for his credibility assessment.

Plaintiff's Lack of Treatment

In weighing the credibility of a claimant's subjective complaints, an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039. Here, the ALJ noted that despite his complaints of pressure in his head and extreme weakness or tiredness, Plaintiff was not following up with a cardiologist or a neurosurgeon. (AR 33.) The failure to seek treatment for allegedly disabling symptoms is a sufficient basis for discounting a claimant's subjective allegations. *See Orn*, 495 F.3d at 638 ("Our case law is clear that if a claimant complains about a disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."). As such, this was an appropriate basis on which the ALJ could evaluate the credibility of Plaintiff's subjective complaints.[3]

## II.   Whether the ALJ Properly Considered Lay Testimony

Plaintiff contends that the ALJ failed to properly consider the testimony of his daughter, Ronawell Touch. (ECF 20 at 14-16.) The Commissioner disagrees, arguing

---

[3] Plaintiff argues that the ALJ could not properly rely upon his daily activities as a basis for discounting his subjective complaints. (ECF 20 at 10-12.) However, the ALJ did not purport to rely upon his daily activities in reaching his credibility determination.

that as he was required to do, the ALJ provided a germane reason for discounting Ms. Touch's testimony. (ECF 27 at 24.)

## A. Lay Testimony

Ronawell Touch submitted a Third-Party Function Report. (AR 235-242.) Ms. Touch indicated that she sees Plaintiff every weekend. They usually cooked, ate, and went outdoors. According to Ms. Touch, Plaintiff's cognitive functioning had "become very slow" and his memory problems caused him to forget "what he needs to do, why, where or when." (AR 235.) In addition, Plaintiff had difficulty concentrating or finishing what he was doing or saying. (AR 235.) Ms. Touch explained that Plaintiff's

> inability to concentrate is affected by a pressure he feels burdened by. He hears some sort of fluid pressure in his head, which gets louder when the environment is quiet. The doctor had no resolution to this despite the severity of the effects.

(AR 242.) With regard to Plaintiff's daily activities, Ms. Touch indicated that Plaintiff cooked his own meals and watched television. He also tried to exercise on a stationary bicycle. He was able to wash dishes and do laundry, but otherwise did not do "much housework because finishing tasks are a burden." (AR 236-237.)

## B. Relevant Law

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)); *see also* 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). Friends and family members in a position to observe a symptoms and activities are competent to testify as to a claimant's condition. *See Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Such testimony "cannot be disregarded without comment." *Bruce*, 557 F.3d at 1115 (citation omitted). When rejecting law witness testimony, an

ALJ must give specific reasons germane for discounting the testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

### C. Analysis

The ALJ addressed Ms. Touch's lay testimony and observed that the symptoms and limitations she reported were similar to those alleged by Plaintiff. The ALJ explained that the medical evidence failed to support the level of limitations she described. (AR 35.)

Citing *Smolen v. Chater*, 80 F.3d 1273, 1288-1289 (9th Cir. 1996), Plaintiff argues that the ALJ improperly relied upon the lack of medical evidence supporting Ms. Touch's testimony to discount it. (ECF 20 at 15-16.) As Plaintiff points out, in *Smolen*, the Ninth Circuit found that the ALJ erred in rejecting lay testimony based upon a lack of medical evidence. *Smolen*, 80 F.3d at 1288-1289. *Smolen*, however, is distinguishable. There, the Ninth Circuit also concluded that the ALJ erred in rejecting the claimant's subjective complaints by, among other things, ignoring relevant medical evidence. *Id*. at 1282-1283. Here, in contrast, the Court has determined that the ALJ properly considered the medical evidence in discounting Plaintiff's subjective complaints. Furthermore, and as the ALJ correctly observed, Ms. Touch's testimony was nearly identical to Plaintiff's subjective complaints. In light of the Court's conclusion that the ALJ provided clear and convincing reasons for rejecting Plaintiff's own subjective complaints, "it follows that the ALJ also gave germane reasons for rejecting her testimony." *See Valentine*, 574 F.3d at 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."); *Rice v. Berryhill*, 2019 WL 142422, at *4 (C.D. Cal. Jan. 9, 2019) (ALJ properly discounted lay testimony which "parroted" the plaintiff's subjective complaints where ALJ had properly rejected the plaintiff's subjective complaints); *see also Molina v. Astrue*, 674 F.3d 1104, 1122

(9th Cir. 2012) (although ALJ erred by failing to explain her reasons for rejecting lay witnesses' testimony, the error was harmless because the ALJ had provided clear and convincing reasons for rejecting the claimant's subjective testimony which described the same limitations).

Last, Plaintiff argues that the "failure to provide any sufficient rationale to reject the lay evidence is grounds for reversal." (ECF 20 at 16.) Plaintiff cites *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054-1056 (9th Cir. 2006), in support of this argument. (ECF 20 at 16.) Plaintiff's reliance on *Stout* is misplaced. In *Stout*, the ALJ failed to even mention the lay testimony, and the Commissioner conceded that "the ALJ's silent disregard of the lay testimony contravenes [Ninth Circuit] case law and the controlling regulations." *Stout*, 454 F.3d at 1054. Here, the ALJ explicitly considered, and provided sufficiently germane reasons for rejecting, Ms. Touch's testimony.

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: 3/7/2022

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

18